UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SQUARE RING, INC.,
    Plaintiff,

vs.                                                  Case No.: 3:24cv491/MCR/ZCB

DEAN O'NEILL TOOLE, et al.,
    Defendants.
    _____/

## ORDER

This matter is before the Court on a "Motion for Rule 11 Sanctions" filed by Defendants Dean O'Neill Toole, Island Fights Championships, Inc., Ryan Toole, and Ryan Toole, Inc. (Doc. 32). Plaintiff has responded in opposition. (Doc. 33). For the reasons below, Defendants' motion will be granted.

### I.    Background

On October 11, 2024, Plaintiff commenced this action by filing a complaint. (Doc. 1). Defendants moved to dismiss the complaint. (Doc. 12). In lieu of responding to the motion to dismiss, Plaintiff filed an amended complaint. (Doc. 19). The amended complaint contained seven counts: (1) a request for a declaratory judgment stating that Defendant Dean Toole constitutes a "promoter" under the Ali Act, 15 U.S.C. §

1

6301(9); (2) a violation of the federal RICO statute, 18 U.S.C. §§ 1962, 1964; (3) breach of contract; (4) tortious interference with contract; (5) tortious interference with prospective economic advantage; (6) injunctive relief under the contract terms; and (7) injunctive relief under the federal RICO statute.  (Doc. 19 at 20-32).

    Defendants moved to dismiss the amended complaint.  (Docs. 21, 34).  In addition to the motion to dismiss, some of the Defendants moved for sanctions under Rule 11.  (Doc. 32).  Plaintiff responded in opposition to all three motions.  (Docs. 28, 33, 37).  The District Judge granted the motions to dismiss without prejudice to Plaintiff filing a second amended complaint within fourteen days.[1]  (Doc. 38 at 33).  At that time, the District Judge "express[ed] no opinion on the merits of the pending motion for sanctions," which remained pending.  (*Id.* at 21 n.13).

    On December 23, 2025, the District Judge referred the motion for sanctions to the undersigned for "further proceedings, if necessary, and disposition by order."  (Doc. 40 at 1).  Although a hearing is not required, the Eleventh Circuit has said that it is "prudent" for a district court "to hold a hearing before imposing sanctions."  *Baker v. Alderman*, 158 F.3d

---

[1] Plaintiff did not file a second amended complaint.

516, 526 (11th Cir. 1998). Thus, the undersigned held a hearing on February 6, 2026. The matter is now ripe for resolution.

## II. Discussion

### A. Sanctions are warranted

According to the Eleventh Circuit, three circumstances warrant sanctions under Rule 11: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). An "objective standard" of reasonableness governs, which requires a court to determine whether the conduct was reasonable under the circumstances that existed when the pleading was filed. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A district court has "broad discretion" in determining whether to impose Rule 11 sanctions. *Fox v. Acadia*, 937 F.2d 1566, 1569 (11th Cir. 1991).

Here, the Court finds that Plaintiff's amended complaint contained objectively frivolous claims, and Plaintiff's counsel should have known

they were frivolous. More specifically, the Court finds that Plaintiff's claim seeking a declaratory judgment under the Ali Act (Count 1) and Plaintiff's civil RICO claim (Count 2) were based on legal theories with no reasonable chance of success and were not reasonably advanced to seek a change in the law.

### 1. Ali Act claim (Count 1)

Looking first to the Ali Act claim, the statute makes clear that only three categories of people may seek to enforce the statute: (1) the Attorney General of the United States (15 U.S.C. § 6309(a)); (2) the "chief law enforcement officer of any State" (15 U.S.C. § 6309(c)); and (3) a "boxer who suffers economic injury as a result of a violation of any provision of this chapter" (15 U.S.C. § 6309(d)). In this case, there is no dispute that Plaintiff was neither the Attorney General of the United States, the chief law enforcement officer of a State, nor a boxer. Thus, as the District Judge concluded in granting the motions to dismiss, Plaintiff lacked the ability to bring a claim under the Ali Act. (Doc. 38 at 4 n.3, 23-24).

Given the clear and unambiguous statutory language, Plaintiff's claim for declaratory judgment under the Ali Act was based on a legal

theory that had no reasonable chance of success. Indeed, the District Judge concluded that the Plaintiff's attempt to obtain a declaratory judgment under the Ali Act was "nothing more than a misguided attempt to bootstrap its state law claims into federal court." (Doc. 38 at 26). The Court would also note that this is not a situation where Plaintiff advanced a reasonable argument to change existing law.

Rule 11 was "not intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes to the law[.]" *United States v. Milam*, 855 F.2d 739, 744 (11th Cir. 1988) (cleaned up). But sanctions are warranted when the "plain language" of a statute forecloses the relief that a party seeks to obtain. *Baker*, 158 F.3d at 524. Or put another way, "[c]ourts do not hesitate to impose sanctions where a claim is plainly foreclosed by statutory language." *No Straw, LLC v. Stout Street Financing*, No. 2:12-cv-0182, 2013 WL 12109452, at *3 (N.D. Ga. May 15, 2013).

In the current case, Plaintiff's attempt to bring a claim for declaratory judgment under the Ali Act was foreclosed by the plain statutory language, which provides a private cause of action (as opposed to a government enforcement action) for only one class of people—boxers.

And Plaintiff by all accounts is not a boxer. This is not a situation where the statute provided wiggle room or spoke in ambiguous terms. Nor is it a situation where there was a statutory void that needed to be filled by the courts. The Ali Act is crystal clear on who may bring a cause of action under the statute. And Plaintiff's attempt to bring a claim under the Ali Act contradicted that clear statutory language. Plaintiff's "decision to proceed on a theory that was specifically precluded by the statute and unsupported by case law was unreasonable." *Fox*, 937 F.2d at 1571 (affirming Rule 11 sanctions where the plaintiff advanced a theory that was precluded by statute). Accordingly, sanctions are warranted under Rule 11 because Plaintiff's Ali Act claim was not supported by existing law or by a nonfrivolous argument for modifying, reversing, or extending existing law.

### 2. RICO claim (Count 2)

The Court will now turn to Count 2, which alleged a federal civil RICO claim against Defendants under 18 U.S.C. §§ 1962, 1964. (Doc. 19 at 22-23). "A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering

activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Here, the District Judge found dismissal was warranted because Plaintiff had failed to plausibly allege "[e]ach of these basic ingredients" of a RICO claim. (Doc. 38 at 13). The District Judge further noted that the amended complaint had a "paucity of factual allegations" in support of the RICO claim. (*Id.* at 13 n.7).

The question today for Rule 11 purposes is whether the RICO claim was objectively frivolous because it was based on a legal theory that had no reasonable chance of success. The answer to that question is yes. As mentioned above, one of the requirements of a RICO claim is the commission of at least two predicate acts of racketeering. "An act of racketeering activity, commonly known as a 'predicate act,' includes any of a long list of state and federal crimes." *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 641 F. Supp. 3d 1321, 1332 (S.D. Fla. 2022). That long list is found in 18 U.S.C. § 1961(1).

In the amended complaint, Plaintiff alleged Defendants committed three predicate acts of racketeering: (1) money laundering, in violation of

18 U.S.C. § 1956; (2) wire fraud, in violation of 18 U.S.C. § 1343; and (3) violations of the Ali Act, 15 U.S.C. § 6301. (Doc. 19 at 18). The problem for Plaintiff is that there was no objectively reasonable legal basis for identifying two of the three identified violations of the law as RICO predicates.

Looking first at the Ali Act, it is not a RICO predicate. That is pellucidly clear. The RICO predicates are listed in 18 U.S.C. § 1961(1), and the Ali Act is nowhere on that list. There is no way that Plaintiff's counsel could have reasonably believed that a violation of the Ali Act qualified as a RICO predicate. Thus, the allegation that the Ali Act was one of the RICO predicates committed by Defendants was frivolous.

Now, let's look at the wire fraud RICO predicate allegation. Wire fraud is one of the RICO predicates listed in 18 U.S.C. § 1961(1). But Plaintiff's counsel had no objectively reasonable basis for believing that Defendants' alleged conduct constituted wire fraud. According to the amended complaint, Defendants committed wire fraud by transmitting false representations via wire to the Florida Boxing Commission in order to obtain licenses and permits that they were not entitled to receive. (Doc. 19 at 18). Such a theory of wire fraud (i.e., fraudulent statements

to obtain licenses and permits from a government agency), however, was rejected by the Supreme Court approximately twenty-five years ago. *See Cleveland v. United States*, 531 U.S. 12, 26-27 (2000) (holding that for purposes of the wire and mail fraud statutes a government license or permit is not "property"). And the principle underlying *Cleveland* was reaffirmed just five years ago. *See Kelly v. United States*, 590 U.S. 391, 400-01 (2020).

By claiming that Defendants committed the RICO predicate of wire fraud based on a legal theory that was squarely foreclosed by Supreme Court precedent, Plaintiff advanced a claim that had no reasonable chance of success. Additionally, Plaintiff's counsel should have known the claim had no reasonable chance of success. If Plaintiff's counsel had conducted research regarding wire fraud before making such an allegation in the amended complaint, then he would have discovered the *Cleveland* rule and realized the conduct allegedly committed by Defendants was not wire fraud under 18 U.S.C. § 1343.[2] *See Hale v. Bay Cnty. Sch. Bd.*, No. 5:17cv265, 2019 WL 3064121, at *6 (N.D. Fla. Mar.

---

[2] This is not a situation where an attorney acknowledged the existence of binding precedent and advanced a good faith argument that challenged the correctness of that binding precedent.

9

25, 2019) (imposing sanctions and stating that "proceeding in the face of an easily located, squarely binding precedent shows recklessness"); *see also Espinoza v. Galardi South Enterps., Inc.*, 772 F. App'x 768, 771 (11th Cir. 2019) (referring to arguments "foreclosed plainly by established binding precedent" as "clearly frivolous"). Accordingly, Plaintiff's allegation that wire fraud was one of the RICO predicates committed by Defendants not supported by existing law or by a nonfrivolous argument for modifying, reversing, or extending existing law.

Because Plaintiff's amended complaint contained frivolous allegations that counsel should have known were frivolous, sanctions against Plaintiff's counsel are warranted under Rule 11.[3] The Court does not make that determination lightly, as it no way relishes or enjoys sanctioning lawyers. Indeed, it is one of the worst parts of being a judge. But when an attorney's conduct warrants sanctions under the rules, it is the Court's duty to impose them.

---

[3] The Court notes that Plaintiff's counsel submitted letters from two attorneys in support of his opposition to Defendants' Rule 11 motion. (Docs. 33-3, 33-4). The Court finds the letters to be entirely unpersuasive.

10

### B. The amount of sanctions

Having determined that Rule 11 sanctions are warranted, the Court will now address what those sanctions will be. Defendants argue that as a sanction Plaintiff's counsel should be required to pay all the reasonable attorney's fees and costs Defendants' incurred in defending this case. As explained below, the Court rejects that argument because such a hefty sanction is not necessary for effective deterrence.

According to Rule 11, the sanction for a violation "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The rule further provides that the "sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees" and costs resulting from the violation. *Id.* The language of the rule demonstrates that the "primary goal of the sanctions is deterrence." *Sussman v. Salem, Saxon, and Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fla. 1993). The primary goal is "not to compensate the opposing party for all of its costs in defending."

11

*Yurus v. Variable Annuity Life Ins. Co.*, No. 4:01cv17, 2006 WL 2131309, at *1 (N.D. Fla. July 28, 2006).

Because the primary goal is deterrence rather than compensation, the Advisory Committee notes explain that "if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments.[4] Only in "unusual circumstances" should the sanction be the payment of attorney's fees and costs incurred by the opposing party. *Id.*; *see also* 5A Wright & Miller's Fed. Prac. & Proc. § 1336.3 (4th ed. 2025) (recognizing that the Advisory Committee Notes provide that "monetary penalties should ordinarily be paid into the court except under unusual circumstances when they should be given to the opposing party" (cleaned up)). A court imposing a sanction under Rule 11 must ensure that the sanction is "calibrated to the least severe level necessary to serve the deterrent purposes of the rule." 5A Wright & Miller's Fed. Prac. & Proc. § 1336.3 (4th ed. 2025). Put another way, the "amount of sanctions is

---

[4] "Although not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle and Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (cleaned up).

appropriate only when it is the minimum that will adequately serve to deter undesirable behavior." *Sussman*, 150 F.R.D. at 216. Given the wide variety of possible sanctions and the need to tailor sanctions to the circumstances of each case, courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation." Fed. R. Civ. P. 11, Advisory Committee notes to 1993 amendments; *see also Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991) ("In a given case a wide range of sanctions will fall within a district court's discretionary powers under Rule 11.").

Having considered the facts and circumstances of the current case, and keeping front and center the principle that the sanctions imposed must be no more than necessary to serve the goal of deterrence, the Court believes the appropriate sanctions in this case are as follows: (1) a monetary penalty of $5,000 to be paid to the Clerk of Court; and (2) the payment of $3,000 to Defendants' counsel as reimbursement for travel expenses and the time spent in connection with the Rule 11 hearing that was held in this matter. These sanctions are levied against, and shall be paid by, Plaintiff's counsel, John S. Wirt.

13

In determining that these sanctions are sufficient but not greater than necessary to serve Rule 11's primary purpose of deterrence, the Court considered that Plaintiff's counsel has been an attorney for approximately thirty-five years and has never before faced sanctions. Moreover, Plaintiff's counsel has no disciplinary history with the Florida State Bar. Plaintiff's counsel appeared to be genuinely mortified by the entire experience of facing sanctions in this case. The current situation seems to be an isolated incident that was precipitated by the fact that Plaintiff's counsel (who was also an owner of Plaintiff Square Ring, Inc.) was too personally invested in this matter and lost his objectivity. During the hearing on Defendants' motion, Plaintiff's counsel acknowledged as much.

Put simply, the Court does not believe that this is the "unusual circumstance" where "deterrence may be ineffective" unless the sanction requires the payment of the attorney's fees and costs incurred by the opposing party. Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments.[5] The Court believes it is unlikely that Plaintiff's counsel

---

[5] As the Eleventh Circuit has recognized, "Rule 11 does not create an absolute entitlement to even reasonable attorney's fees if the court

will be a recidivist violator of Rule 11. And the Court is confident that the sanctions imposed in this case are sufficient but not greater than necessary to fulfill Rule 11's primary purpose of deterrence.

### III. Conclusion

For the reasons above, Defendants' "Motion for Rule 11 Sanctions" (Doc. 32) is **GRANTED**. Plaintiff's counsel, John S. Wirt, must: (1) pay to the Clerk of Court for the Northern District of Florida the amount of $5,000 as a monetary penalty; (2) pay to Defendants' counsel (Robert A. Stok) the amount of $3,000 as reimbursement for travel expenses and the time spent in connection with the Rule 11 hearing that was held in this matter; and (3) make such payments within fourteen days of this Order.

**SO ORDERED** this the 25th day of February 2026.

s/ *Zachary C. Bolitho*<br>
Zachary C. Bolitho<br>
United States Magistrate Judge

---

determines that the rule's central goal of deterrence may be achieved by a lesser sanction." *Fox*, 937 F.2d at 1571.